Good morning and may it please the court. John Bruning for the petitioner Chong Toua Vue who is here in the courtroom with his family today. This case can be boiled down to one simple question. Under ordinary rules of statutory interpretation can a single word, one element in a federal generic definition of a criminal offense mean two different mutually exclusive things? Well your brief starts there but I start with Taminut as construed and as a Barajo. Taminut is an in-bank decision of this court saying we have no jurisdiction to review under the discretion, agency discretion committed by law. If you can't get around that we'll never reach these interesting merits questions. Correct your honor. I believe that there are three different reasons, at least three different reasons why Taminut and Barajo Salinas do not preclude review in this case. First, unlike in Taminut and Barajo Salinas, the agency in this case did not reach the discretionary determination regarding sui sponte reopening or whether or not to reopen. Instead the agency looks solely at the core legal issue in this case. That's squarely rejected. That reasoning is squarely rejected in Barajo. Which said that the fundamental change in the law is no different than extraordinary circumstances. The discretion remains unfettered. Your honor, I think again Barajo Salinas is distinguishable here. There this court characterized the dispute before the agency as a factual quarrel rather than as a question of law. And it was also clear in that case between the agency decision and this court's determination that the outcome would not change regardless of whether the agency found a fundamental change in the law or not. More importantly, the agency in this case did not reach the core question again of whether this is a fundamental change in the law. Simply put the agency only reached the question of whether or not the Supreme Court's decision Esquivel-Quintana applied to Mr. Vu's statute of conviction. Performed that sole legal analysis before getting to the question of whether this is a fundamental change in the law. I.J. squarely said it was not a fundamental change. Again that's simply contingent upon that core legal finding. In Barajo Salinas that dealt with whether or not the Supreme Court's decision in Decomp applied to his case. And there the BIA held that regardless of whether it did, it's both an incremental change in the law but also did not change the outcome in his case. Second, Barajo Salinas left open that question of whether or not a fundamental change in the law or a decision based upon an incorrect legal premise could still be reviewed. Let me ask you this. Is it really a fundamental change in the law? And the reason why I'm asking that is it was a fundamental change in the law for statutory rape offenses perhaps. But I don't see how it's a fundamental change in the law for other types of offenses, especially in light of what Justice Thomas said in the opinion. Well, Your Honor, I think definitely the Supreme Court's decision was in reference to a statutory rape offense. However, the language of that decision has broader implications than that as the Fifth Circuit has recognized. And so in Esquivel-Quintana, the agency's interpretation- Wait a minute. Shroff expressed the equated online solicitation with what the statutory rape considered in Esquivel. So when you say the Fifth Circuit has taken it much further, I don't understand why and how. The Fifth Circuit recognized in Shroff that the offense there on online solicitation was not a statutory rape offense. It equated it. It equated them right there in the opinion. But at the same time, by saying this is like this, it does implicitly go beyond what's interpreted as the narrow reasoning in Esquivel-Quintana that it only applies to statutory rape offenses. But it doesn't even apply to all statutory rape offenses, right? Because Justice Thomas said in the opinion for the court that if it involved a parent or somebody who had some sort of supervisory relationship with a child, then it might be a different age requirement. Exactly. And that's one of two narrow exceptions that were carved out by the court, that were recognized by the court. Well, doesn't that suggest that the opinion is quite limited? I mean, it doesn't even cover all statutory rape offenses. So sort of a force your eye, it wouldn't cover offenses that don't involve statutory rape. Well, I think that that's in some ways true. And I think what the Supreme Court is precisely looking at in distinguishing between statutory rape offenses that are based solely on the age and those offenses that are based on relationship of trust or a special relationship, or where there is an age distinction, has very much to do not only with the age at which Congress defined minor, but has to do fundamentally with the age of consent versus the age of being able to contract. And I think that that's exactly what the Fifth Circuit is getting at in saying that, in this case, that is like statutory rape, but isn't. Well, but here's the problem. And it gets back to my earlier point, which is I have some sympathy for your argument that minor can't mean different things for different crimes. I think that there's some merit to that. I don't know how it comes out for individual crimes. But the problem I'm having is that you didn't do the analysis that they did in the Esquivo case, right? You didn't go in and do—Justice Thomas has an appendix with a 50-state survey, plus looking at comparable federal crimes. I don't see that argument being made. I don't see any evidence of what the generic offense is. And so that's the problem I'm having with your argument. Right. And once we get past the statutory rape context, the difficulty with that type of analysis is that it's really all over the map. So there's any number of other of a minor. So there's indecent exposure, lewd acts, any number of things that are both—that both involve what would ordinarily be consensual and what would ordinarily not be consensual, but for the age of the victim. So it's really, really difficult to look at, even within Minnesota law, of how all these different acts are criminalized without going to all 50 states. So again, I think this boils down to how the statute must be constructed under the categorical approach and under ordinary tools of statutory interpretation, where the government in Esquivel-Quintana, and really in this case, too, before the agency and the government's arguments in briefing here, there is no generic definition. There must be a generic definition, but there—practically, there is not one. And so that leaves us in a little bit between a rock and a hard place, where the statute must be—the statute of conviction must be compared to a generic federal offense, but there is—there isn't one defined. Certainly, remand to the agency to actually define this offense would be appropriate. However, without that generic definition in place, it's—it makes it much more difficult to do that 50-state analysis. And you think the procedural posture here—so we're talking about a fundamental change of the law, and I could understand if you're making that argument if it was brought within 90 days and you weren't asking us to, you know, to sort of reopen it 15 years later, but do you think the procedural posture would allow that kind of de novo review, starting over, essentially? Yes, Your Honor. And again— Based on what case? So, Your Honor, I do, again, think that this falls within the exception that was—first, that was carved out in Barajas-Salinas that the court did not reach. And again, at this point, there's now four circuits— What exception is that? For basically the fundamental question of law issue. And it wasn't recognized by the court, but the court explicitly did not reach it. Acknowledged the cases in Piume and Mahmoud, out of the Second and Third Circuits, that recognized this incorrect legal premise argument, and the court here, in Barajas-Salinas, did not—explicitly did not reach that. It did not reach it, and it chose not to. Since then, two other circuits have joined the Second and the Third in recognizing that a fundamental legal error of this nature still merits review, even in a sua sponte type motion. Now, which of those cases involved a sua sponte review? I believe—I believe Bonilla v. Lynch, in particular, out of the Ninth Circuit, I believe, is the most recent. But also, Your Honor, this—there is a subsequent Supreme Court case. I know that this court has dealt with the Supreme Court's decision in Kukana addressing statutory motions to reopen. It has not, however, addressed the Supreme Court's decision in Mata v. Lynch in 2015 that did deal with a sua sponte motion out of the Fifth Circuit. So this court—I think it is appropriate at this time to revisit Barajas-Salinas and Taminut in light of Mata. Now, you know we can't do that as a panel. Well, Your Honor, as a panel, in light of intervening in Supreme Court precedent— Particularly Taminut. That was an en banc, almost a unanimous en banc. Right. But I do think that the fact that other circuits don't like where that leads them is irrelevant to the panel. I don't think that we need to get back to Taminut here. I think that this panel can go back and revisit Barajas in light of that intervening in Supreme Court authority. Alternatively, if it is necessary to go to an en banc panel, then that's where we need to go in order to address that. However, I do think that there was room left open in Barajas-Salinas, and I think that that room that was open is even more prescient here in light of Mata v. Lynch. Again, this court has not had opportunity to address Mata. This court has never cited Mata or addressed the reasoning there. And the Supreme Court in Mata said— What? What's Mata? What does that have to do with this? The Mata v. Lynch was review of sua sponsae denial by the BIA that arose out of the Fifth Circuit. And there, the Supreme Court— Year? 2015. And it's cited in your— Yes, it is, Your Honor. I'm going to find the specific page number. And it cast doubt on Taminut, you think? At the very least, on Barajas-Salinas, I believe. In Mata, the Supreme Court held that the Fifth Circuit— I think Barajas was after that. I believe that Barajas was, I think, the year before that. Okay. So, in Mata, the Supreme Court held that notwithstanding the BIA's denial on— refusal to grant reopening sua sponsae or exercise that sua sponsae authority, the Court of Appeals still had jurisdiction to review the underlying legal question in that case, which was whether or not the petitioner was eligible for equitable tolling in his motion to reopen. And I think this also touches upon an issue that's fundamental in this case, which is that the agency hasn't actually addressed whether or not Mr. Vu's motion is subject to equitable tolling or if it should be considered sua sponsae. Now, counsel, that's just not right procedurally. The IJ denied the motion to reopen as untimely. That includes—incorporates an analysis of equitable tolling if argued. If not argued, it was forfeited, particularly when it wasn't raised again on appeal to the BIA. So you can't say the—just because the BIA didn't discuss it, they don't have to discuss issues that are not raised and have been forfeited. And you're—I am running out of time, but the IJ did discuss both and held essentially that because she found that Esquivel-Quintana— But it's forfeited. How is it not forfeited? Give me authority for the notion that equitable tolling was not forfeited by the failure to appeal. The denial of a motion to reopen is untimely. Well, Your Honor, the—again, the IJ discussed both equitable tolling and sua sponsae as reasons for denial, and I— Do you have a case? Do you want to answer the question before you—and then I'll let you continue your argument? Well, Your Honor, I don't necessarily believe that that's—that it was forfeited before the BIA. I asked if you had a case. I—I don't, Your Honor. All right. Well, that's—no, I didn't think you did, but all you have to do is say that and carry on. Okay. I want to make sure that we're clear. If there's no further questions, this time I'd like to reserve the remainder of my time. Thank you. Ms. Niles? Good morning, Your Honors. May it please the Court. I'm Erica Niles for the Attorney General. As this Court recognizes, you have governing precedent that squarely controls this Court's jurisdiction in this case, and jurisdiction is extremely limited. The only issue that this Court could review is a colorable constitutional claim, and one has not been presented in this case. To be sure— Well, don't we have to infer a little bit here? And maybe it's not a—maybe not—it's not a huge inference, but my understanding of Taminit says it's a—it's committed to the agency by law, and generally non-reviewable. And then I read Baraha-Salinas as suggesting that a fundamental change of the law may not get you around the Taminit rule, but not definitively deciding that. Is that your reading of the precedent, or am I misreading it? My reading of the precedent is that it does definitively say that an allegation of a fundamental change in law, which is exactly what we have here, falls under the exceptional circumstances category that the Board sometimes weighs in these sous-spante determinations, and that the exceptional situations are unreviewable, and that is Taminit and Baraha-Salinas, and that is squarely. This case, and it governs. And I want to point out, it's very important here that counsel did not raise any of these jurisdictional hurdles in his opening brief. He only addressed them in his reply brief, and that is too late. He has waived any arguments that this Court, this panel, should carve out some sort of that there is a circuit split as to whether or not the Court can carve out an exception for if the Board was under a faulty legal premise. He did not argue that before this Court. He didn't brief it. He didn't talk about all the cases that whether there is a circuit split, or identify how this is different from the Baraha-Salinas fundamental change in law, which is not a faulty legal premise. So, this is not the case to take up whether or not to carve out an exception because he didn't present it. We presented the jurisdictional hurdles in our brief to let you know that what's in front of you is extremely limited. It's not how he presented it in his brief. And the Mada case that he said he cited is in his reply brief. It's not in his opening brief, just to be clear. And yes, Barajas was decided before Mada, but Mada, as this Court recognizes, was an equitable tolling case that is very different than looking at a typical legal question. And so, it's very narrow to equitable tolling. He did completely waive it. His reply brief says that he did not present it to the Board, and he waived it. Equitable tolling, we clearly have jurisdiction to consider because that's one of the legal issues that arises in denial of a motion to reopen is untimely. Yes. This Court would have jurisdiction, but he- Our precedence. Yes. Way before Taminat and confirmed in Taminat. Yes, and Mada settled a circuit split on that question. But equitable tolling is not before this Court. He explicitly said he's not challenging it. He's not bringing it up to this Court. The Board didn't address it. The Board's- The only decision by the Board that this Court could review, but again, he waived review by not arguing this, is whether or not the Board abused its discretion in denying reconsideration. And that review is very limited. You can't look at the underlying denial of sua sponte reopening because of all the reasons we discussed about Taminat and Barajas-Seminos. So all that this Court could look at under Averia Nova is whether or not the Board provided a rational and reasonable explanation for denying reconsideration. And counsel and petitioner did not make an argument that the Board abused its discretion by not providing a reasonable explanation. He instead is arguing the merits of the fundamental change in law question. And it would be very narrow here. And the Board's reasoning, just to provide assurances to the Court, is that he simply repeated his argument in his motion to reconsider. And that is never a basis for reconsideration. Disagreeing with the outcome of the denial of reopening, re-raising the same issue and trying to present a couple cases that bolster or attempt to bolster, excuse me, that claim as the Board identified, he continues to raise the argument about a fundamental change in law because of Esquivel-Quintana. And the Board said, for the reasons we already denied it, we deny reconsideration. And then the Board addressed the cases he presented, finding this doesn't change the outcome because those cases don't stand for the proposition that you're saying yet again. So if this Court were to review it, but it shouldn't because he didn't argue it, the Board absolutely did not abuse its discretion in denying reconsideration. And the Court is barred from, under its own case law, from looking at the fundamental change in law question. But as this Court recognizes, Esquivel-Quintana is extremely narrow to the types of offenses where it's criminalized predicated only on age. Here we have soliciting or hiring a child for prostitution. The nature of the relationship is inherently illicit. And it's transactional. It's exploitative. It falls under any standards under sexual abuse of a minor type of umbrella. And for those same reasons, we don't have, Judge Strauss mentioned, a concern about the definition of minor as an element. And here, the Board's longstanding precedent, excuse me, has been under 18 for the definition of minor. And that, in the United States, most people understand that in most applications, the definition of minor is under 18. I don't disagree. But, I mean, you know, there wasn't a showing here, a 50-state survey or, you know, there wasn't the same thing that happened as Esquivel here. But on the other hand, to the extent you're talking about the meaning of minor, we read language the same way in different cases. And so it at least raises a prospect that 16 is the presumptive age for purposes of the generic offense of sexual abuse of a minor. Potentially. It's a colorable argument in light of that case. Would you agree? Yes, but it's one that the Board should address in the first instance. Because in Esquivel-Quintana, the Court looked at the language of the statute, sexual abuse of a minor, looked at that element minor, and said, we're only examining it in this narrow subset of offenses that could fall under that large umbrella. The narrow subset being statutory rape. And they said for purposes of statutory rape alone, that the language itself speaks for itself because of that 50-state survey and the way statutory rape has been criminalized in the United States. But it expressly did not go beyond that narrow finding. It didn't even address the question of whether or not there needs to be an age difference. It left that for another day. And it left for another day whether or not a special relationship, as Judge Joss pointed out, could then bring back in the 17-year-olds and the 16-year-olds into the sexual abuse of a minor category. Notably, the Supreme Court did not find the element minor to be vague at all. It just said, the 50-state survey informs us that we have clarity what Congress meant for statutory rape offenses. And that is all. But this court has addressed the board's precedent in Rodriguez-Rodriguez, where they outlined their standards for sexual abuse of a minor. All of the other circuits have, and most have deferred to the board. This really is a Chevron deference question because the courts recognize that sexual abuse of a minor, that term, generally speaking, is not defined. It's an ambiguous phrase. And the board is vested as the agency to come up with the definition and flesh that out. So any challenges to the board's definition for all other offenses that are not statutory rape is really a Chevron challenge, which is, again, a legal question and not a constitutional question. If the court doesn't have any further questions to me, I'll just cede my time. Very good. Thank you. Mr. Bruning? Thank you, Your Honors. I first want to start with the respondent's arguments regarding a waiver of jurisdictional arguments. Jurisdiction, simply put, cannot be waived or forfeited. That is something for the court to decide sui sponte. Under Gonzales v. Taylor, 2012 Supreme Court case, as well as this court's decision in our v. TransUnion LLC from last year. So simply, the argument that jurisdiction can be waived by the petitioner is not an argument that bars any type of relief in this case. Other types of legal arguments certainly can be waived. I think the question raised is whether jurisdictional arguments, arguments to expand jurisdiction that otherwise seems to be foreclosed, can be waived. That's a little trickier. It is, and that's something that's... I don't... I mean, the general proposition you just recited, I think, is clear. Exactly. And I think insofar as there are issues, that's something that should be fought out through litigation as it has been here. Subsequently, Your Honor, the other thing that I wanted to talk about in response to counsel's arguments is the idea that the term minor is not vague. But returning to some of the questions that Judge Strauss asked, there's simply no way in this situation under 8 U.S.C. 1101A43A to define minor in mutually exclusive terms, to define it so that it means one thing in one situation and one thing in another. It simply destroys the categorical approach such that the generic definition is defined in response to the state crime of conviction itself. Well, the problem that you have, if I can ask this last question, the problem you have with that is that the opinion itself recognizes that it's possible if you have a special relationship. And so that's the problem I have with the other side of the argument, is that there can be different ages, even according to the plain text of the opinion itself. If I may respond. So the Supreme Court, I think it's important to clarify, the Supreme Court doesn't say there is a different definition for minor in these cases. It simply says that this may be an exception to that rule. That's an exception that the Fourth Circuit found in Thompson v. Barr, finding a special relationship or a custodial relationship with a child. But it's not something that the Supreme Court addressed one way or another. And I think that was left, the Supreme Court left that for other courts to decide. OK. Thank you. Thank you, counsel. The case has been thoroughly briefed and argued, and we will take it under advisement. Thank you, Your Honor.